1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  TILDEN-COIL CONSTRUCTORS,
    INC.,
11
              Plaintiff,
12
         v.
13
    LANDMARK AMERICAN
14  INSURANCE COMPANY,
15
              Defendant.

CASE NO. C09-1574JLR

ORDER GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT RE:
CHOICE OF LAW

16       This matter comes before the court on Plaintiff Tilden-Coil Constructors, Inc.'s

17  ("Tilden-Coil") motion for summary judgment regarding choice of law (Dkt. # 29).

18  Tilden-Coil contends that Washington law governs its claims against Defendant

19  Landmark American Insurance Company ("Landmark"); Landmark counters that

20  California law governs this dispute.  (*See* Resp. (Dkt. # 38).)  Having considered the

21  submissions of the parties, and deeming oral argument unnecessary, the court GRANTS

22  Tilden-Coil's motion for summary judgment regarding choice of law (Dkt. # 29).

ORDER- 1

# I.   BACKGROUND

**A.      The Underlying Lawsuit**

The following facts are undisputed.  In September 2004, Tilden-Coil, a California construction contractor, hired Westec Industries, Inc. ("Westec"), a Washington corporation with its principal place of business in Seattle, Washington (Christiansen Decl. (Dkt. # 31) ¶ 3), to design and furnish a belt conveyor system for a composting facility in Rancho Cucamonga, California.  (Irving Decl. (Dkt. # 33) ¶ 6.)  Westec hired two Washington-based companies, Puget Sound Coatings and Kipper & Sons Fabricators, Inc., to prepare the surface of the metal that Westec would use to fabricate the belt conveyors.  (Christiansen Decl. ¶¶ 5-6.)  Westec fabricated the belt conveyors at its facility in Seattle and then shipped the belt conveyors to California.  (Irving Decl. ¶ 9.)  Tilden-Coil's subcontractors installed the belt conveyors by welding them to "vertical tube steel," which in turn was welded to the facility's roof structure.  (*Id.*)

Not long after the conveyors were installed, their coatings began to degrade.  (*Id.* ¶ 10.)  Following an investigation by a coatings expert, Tilden-Coil removed, recoated, and reinstalled the conveyor system.  (*Id.* ¶ 11.)  In early 2006, Tilden-Coil notified Westec that it intended to seek reimbursement for the costs it had incurred in repairing Westec's conveyor system.  (Christiansen Decl. ¶ 7.)

In 2005, Westec had purchased a commercial general liability ("CGL") policy from Landmark through Landmark's Seattle broker.  (*Id.* ¶ 4.)  Westec purchased the policy to cover liability arising from its work, which, at the time, took place almost exclusively in Seattle and at job sites in Washington and Alaska.  (*Id.* ¶¶ 3-4.)  Westec

1  notified Landmark of Tilden-Coil's claim for reimbursement, and Landmark responded

2  that the policy did not cover the claim.  (*Id*. ¶ 8 & Ex. A.)

3      On March 23, 2007, Tilden-Coil sued Westec in California state court (the

4  "underlying lawsuit").  (*Id*. ¶ 9.)  Westec tendered Tilden-Coil's lawsuit to Landmark,

5  which declined to defend Westec because the CGL policy specifically excluded from

6  coverage claims based on damage to Westec's own products.  (*Id*. ¶ 10 & Ex. B.)

7      On October 23, 2008, Tilden-Coil's insurance coverage attorney, Scott C. Turner,

8  wrote a letter to Landmark in which he argued that Landmark had wrongfully refused to

9  defend Westec and invited Landmark to participate in an upcoming mediation between

10  Tilden-Coil and Westec.  (Shanagher Decl. (Dkt. # 39) Ex. B.)  On February 3, 2009, Mr.

11  Turner wrote a second letter, in which he reiterated Tilden-Coil's position that Landmark

12  had wrongfully refused to defend Westec.  (*Id.* Ex. C.)

13      On February 25, 2009, six weeks before the underlying lawsuit's original April 6,

14  2009 trial date, Landmark agreed to defend Westec subject to a reservation of rights.

15  (Christiansen Decl. ¶ 13 & Ex. C.)  Landmark explained that coverage issues raised in

16  Mr. Turner's February 2009 letter had caused Landmark to reconsider its position.  (*Id.*

17  Ex. C.)  Specifically, Landmark conceded that there was a possibility that "rip and tear"

18  damage to the composting facility might have occurred when the defective portions of the

19  faulty conveyor belt system were removed, and that, if so, such damage might be covered

20  under the CGL policy.  (*Id.* at 12.)  Landmark appointed counsel to defend Westec in the

21  underlying lawsuit, and agreed to reimburse Westec for defense costs it had incurred to

22  date.  (*Id.* at 12-13.)

1    Landmark's appointed counsel obtained a continuance of the trial date in the

2    underlying lawsuit and the parties continued to attempt to resolve their dispute.  In

3    December 2009, Tilden-Coil and Westec, having by then mediated four times without

4    success, settled the underlying lawsuit.  (Irving Decl. ¶¶ 16, 19.)  Westec agreed to

5    stipulate to a judgment of $1,803,244 in Tilden-Coil's favor and to assign its rights

6    against Landmark to Tilden-Coil.  (*Id.* Ex. E.)  In return, Tilden-Coil agreed not to

7    execute its judgment against any of Westec's assets.  (*Id.*)  Tilden-Coil subsequently

8    moved for entry of the stipulated judgment and a finding that the settlement had been

9    made in good faith pursuant to California Code of Civil Procedure section 877.6.[1]  (*Id.*

10   Ex. F.)  The California court permitted Landmark to intervene in the good-faith hearing,

11   but nevertheless granted Tilden-Coil's motion on March 15, 2010.  (*Id*. Ex. I at 8.)

12   **B.    Procedural History**

13        On October 6, 2009, Tilden-Coil filed the instant lawsuit against Landmark in

14   Washington state court, seeking a declaratory judgment that Tilden-Coil's claims against

15   Westec were covered under Westec's CGL policy.  (Not. of Removal (Dkt. # 1) at 10-13

16   ("Compl.").)  Landmark removed the case to this court on November 4, 2009.  (*Id.* at 1-

17   4.)  Following the settlement of the underlying lawsuit, Tilden-Coil amended its

18   complaint to add additional claims to which it succeeded as Westec's assignee.  (Am.

19   _____

20        [1] A good-faith determination under section 877.6 bars joint tortfeasors from asserting
     claims against the settling tortfeasor for contribution or indemnification based on comparative
21   negligence or comparative fault.  Cal. Civ. Proc. Code § 877.6(2)(c).  *See also Hamilton v. Md.
     Cas. Co.*, 41 P.3d 128, 135 (Cal. 2002) (purpose of section 877.6 good-faith determination is to
22   ensure fairness to joint tortfeasors).

ORDER- 4

Compl. (Dkt. # 22).)  Specifically, Tilden-Coil added claims against Landmark for: (1)

breach of the duty to attempt to settle; (2) breach of the duty to pay; (3) breach of the

duty to defend; (4) violation of the Washington Administrative Code and Consumer

Protection Act ("CPA"); (5) negligence; and (6) bad faith.  (*Id.*)  Tilden-Coil now moves

for a ruling on summary judgment that Washington law governs the issues in this case.

## II.   ANALYSIS

**A.      Standard of Review**

Summary judgment is appropriate if the evidence, when viewed in the light most

favorable to the non-moving party, demonstrates that "there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los

Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

showing there is no material factual dispute and that he or she is entitled to prevail as a

matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, the

nonmoving party must go beyond the pleadings and identify facts which show a genuine

issue for trial.  *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229

(9th Cir. 2000).

**B.      Choice of Law**

A federal court sitting in diversity applies the forum state's choice-of-law rules.

*Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).  Under Washington law, when parties

dispute choice of law, there must be an actual conflict between the laws or interests of

Washington and the laws or interests of another state before the court will engage in a

1    conflict-of-laws analysis.  *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash.

2    2007).  Absent an actual conflict, Washington law presumptively applies.  *Id*.  If an actual

3    conflict exists but the parties did not select the law to govern the issue, the court will

4    determine the controlling law under the "most significant relationship" test.  *Id.* at 1120-

5    21.  Washington courts follow *Restatement (Second) Conflict of Laws* (1971)

6    ("Restatement") § 188 to determine the controlling law for contract claims, *Mulcahy v.*

7    *Farmers Ins. Co. of Wash.*, 95 P.3d 313, 317 (Wash. 2004), and Restatement § 145 for

8    tort and CPA claims, *Rice v. Dow Chem. Co.*, 875 P.2d 1213, 1217 (Wash. 1994).

9        1.    Actual Conflict

10        The parties focus their arguments regarding the existence of an actual conflict on

11   the effect that the settlement of the underlying lawsuit will have on the determination of

12   damages in the instant lawsuit.  Under Washington law, "[w]hen an insurer refuses to

13   settle a claim in a liability lawsuit, the insured may, without the insurer's consent,

14   negotiate a settlement with the plaintiff and assign the coverage and bad faith claims to

15   the plaintiff in exchange for a covenant not to execute against the insured."  *Green v. City*

16   *of Wenatchee*, 199 P.3d 1029, 1035 (Wash. Ct. App. 2009).  If the settlement is

17   reasonable and made in good faith, it establishes not only the insured's liability to the

18   plaintiff but also its presumptive damages in a later coverage suit against the insurer,

19   even where the insurer did not act in bad faith.  *Mut. of Enumclaw Ins. Co. v. T & G*

20   *Constr., Inc.*, 199 P.3d 376, 382 (Wash. 2008); *Besel v. Viking Ins. Co. of Wis.*, 49 P.3d

21   887, 891 (Wash. 2002); *see also Chaussee v. Md. Cas. Co.*, 803 P.2d 1339, 1342-43

22   (Wash. Ct. App. 1991) (setting forth the factors a court must consider in determining

1    whether a settlement was reasonable).  Furthermore, the insured's noncompliance with

2    policy provisions designed to preclude independent settlements releases the insurer from

3    liability only if the insurer can demonstrate that it was actually prejudiced by the

4    insured's actions.  *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 881 P.2d

5    1020, 1029 (Wash. 1994).

6          Under California law, however, whether the insured may settle independently with

7    the plaintiff, and whether an independent settlement creates a presumption of liability or

8    damages in a subsequent coverage dispute, depend on whether the insurer complied with

9    its duties to the insured.  If an insurer wrongfully denies coverage or refuses to provide a

10   defense, the insured is free to negotiate a settlement with the plaintiff, and that settlement

11   creates an evidentiary presumption of liability and damages for purposes of a subsequent

12   suit against the insurer.  *Pruyn v. Agric. Ins. Co.*, 42 Cal. Rptr. 2d 295, 299 (Cal. Ct. App.

13   1995).  But if the insurer has accepted the defense of the claim, an independent settlement

14   between the insured and the plaintiff creates no presumption of liability or damages, even

15   when the settlement was made in good faith under California Code of Civil Procedure

16   section 877.6.  *Hamilton v. Md. Cas. Co.*, 41 P.3d 128, 130 (Cal. 2002).  Additionally, a

17   "no action" clause in the insurance policy precludes the insured from entering into an

18   independent settlement when the insurer is providing a defense.  *Safeco Ins. Co. v. Super.*

19   *Ct.*, 84 Cal. Rptr. 2d 43, 45 (Cal. Ct. App. 1999).

20         Thus, whether there is an actual conflict between Washington and California law

21   depends on whether Landmark wrongfully refused to defend Westec.  Tilden-Coil asks

22   the court to assume that Landmark wrongfully breached its duty to defend Westec.

1    (Reply (Dkt. # 45) at 2.)  Based on this assumption, there would be no actual conflict:

2    under the laws of both Washington and California, Westec would be entitled to settle the

3    underlying lawsuit without Landmark's consent, and that settlement, if adjudged

4    reasonable, would establish Westec's liability and presumptive damages for purposes of

5    the claims it assigned to Tilden-Coil.  *Besel*, 49 P.3d at 892; *Pruyn*, 42 Cal. Rptr. 2d at

6    299.  Landmark, on the other hand, contends that, because it was defending in good faith

7    at the time of the settlement, there is an actual conflict:  under California law, Westec

8    would not be entitled to settle, and its settlement would have no presumptive effect on

9    liability or damages; under Washington law, by contrast, Westec's settlement would have

10   a presumptive effect on liability and damages provided it is reasonable.  *Hamilton*, 41

11   P.3d at 130; *Mut. of Enumclaw*, 199 P.3d at 382.

12          At this stage of the litigation, it is premature to assume, as Tilden-Coil asks the

13   court to do, that Landmark wrongfully breached its duty to defend Westec.  The court

14   therefore assumes, for purposes of the choice-of-law analysis, that an actual conflict

15   exists based on Washington's and California's different approaches to independent

16   settlements between the insured and the plaintiff.  Accordingly, the court cannot

17   presumptively apply Washington law and must instead perform a "most significant

18   relationship" analysis.

19          2.    Most Significant Relationship

20          Washington courts apply the general principles set forth in the Restatement to

21   determine which state has the most significant relationship to the relevant transaction or

22   occurrence.  As a threshold matter, the court notes that, regardless of which state's law

ORDER- 8

applies, Tilden-Coil stands in Westec's shoes as Westec's assignee.  *See Johnson v. County of Fresno*, 4 Cal. Rptr. 3d 475, 482 (Cal. Ct. App. 2003); *Paullus v. Fowler*, 367 P.2d 130, 134 (Wash. 1961).  Accordingly, the court must focus on Westec and Landmark, rather than on Tilden-Coil and Landmark, when considering each state's relationship to the parties.  The court concludes, viewing the evidence in the light most favorable to Landmark, that Washington law governs both the contract claims and the tort claims that Westec assigned to Tilden-Coil.

a.  *Contract Claims*

Washington courts follow Restatement section 188 to determine which state's law applies to insurance coverage disputes.  *See Fluke Corp. v. Hartford Accident & Indem. Co.*, 34 P.3d 809, 815 (Wash. 2001).  Under section 188, the "rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6."  Restatement § 188(1).  Section 188 directs the court to focus on five contacts to determine the state with the most significant relationship to the transaction and the parties: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil, residence, nationality, place of incorporation, and place of business of the parties.  *Id.* § 188(2).  "The approach is not to count contacts, but rather to consider which contacts are most significant and to determine where those contacts are found."  *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 425 P.2d 623, 628 (Wash. 1967).  Section 6 states that the factors relevant to choosing the applicable law

1    include:  (a) the needs of the interstate and international systems; (b) the relevant policies

2    of the forum; (c) the relevant policies of other interested states and the relative interests

3    of those states in the determination of the particular issue; (d) the protection of justified

4    expectations; (e) the basic policies underlying the particular field of law; and (f) certainty,

5    predictability, and uniformity of result.  Restatement § 6(2).  Accordingly, the court

6    keeps these factors in mind in evaluating the section 188 contacts.  The court is also

7    mindful of the Washington Supreme Court's recognition that "the expectations of the

8    parties to the contract may significantly tip the scales in favor of one jurisdiction's laws

9    being applied over another's."  *Mulcahy*, 95 P.3d at 317-18; *see also* Restatement §188

10   cmt. b (noting that the protection of justified expectations is "of considerable importance

11   in contracts").

12        Here, Westec, a Washington corporation with its principal place of business in

13   Washington, negotiated and purchased the CGL policy in Washington from Landmark's

14   Seattle-based broker.  Landmark, the other party to the contract, is domiciled not in

15   California, but in Oklahoma and Georgia.  Thus, the first, second, and fifth contacts

16   support applying Washington law.  The third and fourth contacts—place of performance

17   and location of the contract's subject matter—are, in this case, less significant.  The place

18   of performance under the insurance contract was uncertain at the time of contracting:

19   Westec performs most of its work in Washington and Alaska, and as of early 2005 had

20   only one project in California.  (*See* Christiansen Decl. ¶ 3.)  Similarly, the location of the

21   policy's subject matter was not fixed, as it would have been with a policy that insures

22   against a localized risk.  *See* Restatement § 188 cmt. e (place of performance can bear

ORDER- 10

1   little weight if uncertain or unknown; situs of subject matter is significant for contracts

2   that protect against localized risks).

3       Having evaluated these contacts in light of the principles of Restatement section 6,

4   the court concludes that Washington has the most significant relationship to the parties

5   and the insurance contract, and that Washington law therefore governs the parties'

6   dispute.  "The state of Washington has a strong interest in protecting insureds who must

7   resort to litigation to establish coverage." *Axess Int'l Ltd. v. Intercargo Ins. Co.*, 30 P.3d

8   1, 8 (Wash. Ct. App. 2001); *cf. Bethlehem Constr., Inc. v. Transp. Ins. Co.*, No. CV-03-

9   0324-EFS, 2006 WL 2818363, at *29 (E.D. Wash. Sept. 28, 2006) (applying California

10  law where it provided heightened protections to a Washington insured).  Washington's

11  interest particularly outweighs California's interest here, where neither of the parties to

12  the policy is a California citizen.  Furthermore, applying Washington law is consistent

13  with the justified expectations of the parties:  Westec's policy was negotiated and

14  purchased in Washington to cover risks associated with its fabricating activities, which

15  were performed "almost exclusively" in Washington and Alaska.  (Christiansen Decl. ¶

16  3.)  The parties would, therefore, justifiably expect Washington law to govern their rights

17  and obligations under the insurance contract.

18      Washington's interest in protecting its insureds also outweighs California's

19  interest in deterring fraud and collusion with respect to settlement agreements,

20  particularly when Washington courts have already addressed this concern.  Here, the

21  dispute centers around the conflict between California law and Washington law regarding

22  the effect of an independent settlement when the insurer is providing a defense.  A

ORDER- 11

1  primary concern for California courts in declining to give effect to these settlements is the

2  potential for fraud and collusion between the insured and the plaintiff.  *See, e.g.*,

3  *Hamilton*, 41 P.3d at 135 (good-faith hearing not designed to prevent insured from

4  agreeing to pay more than its share of the loss); *Pruyn*, 42 Cal. Rptr. 2d at 304 (courts

5  consider the nature and extent of judicial oversight of the settlement process to give

6  assurance that there has been no fraud or collusion); *Wright v. Fireman's Fund Ins. Cos.*,

7  14 Cal. Rptr. 588, 604 (Cal. Ct. App. 1992) (allowing insured to independently settle

8  creates potential for fraud and collusion).  By contrast, the Washington Supreme Court

9  explicitly addressed this concern in *Mutual of Enumclaw* and concluded that the insurer's

10  opportunity to intervene in a reasonableness hearing would protect against fraud and

11  collusion: "[I]f a reasonable and good faith settlement amount of a covenant judgment

12  does not measure an insured's harm, our requirement that such settlements be reasonable

13  is meaningless."  *Mut. of Enumclaw*, 199 P.3d at 383 (quoting *Besel*, 49 P.3d at 891).  For

14  these reasons, the court concludes that Washington law governs the contract claims that

15  Westec assigned to Tilden-Coil.

16                b.    *Tort and CPA Claims*

17         Washington courts follow Restatement section 145 to determine which state's law

18  governs tort and CPA claims.  *Rice*, 875 P.2d at 1217.  Section 145 directs the court to

19  determine the state with the most significant relationship to the occurrence and the parties

20  under the general principles stated in Restatement section 6.  Restatement § 145(1).  In

21  doing so, the court should take into account the following four contacts: (a) the place

22  where the injury occurred; (b) the place where the conduct causing the injury occurred;

1   (c) the domicil, residence, nationality, place of incorporation, and place of business of the

2   parties; and (d) the place where the relationship, if any, between the parties is centered.

3   *Id.* § 145(2).  These contacts must be evaluated according to their relative importance

4   with respect to the issue at hand.  *Id.*  The most important section 6 factors for torts

5   claims are the needs of the interstate and international systems, the relevant policies of

6   the forum, the relevant policies of other interested states and particularly of the state with

7   the dominant interest in the determination of the particular issue, and ease in the

8   determination and application of the law to be applied.  *Id.* cmt. b.

9        Here, the tort claims that Westec assigned to Tilden-Coil arose out of Landmark's

10   duties to Westec under Westec's CGL policy.  As discussed above, Washington has the

11   most significant relationship to that policy and to the rights and obligations that it created.

12   The location of the parties also favors Washington over California:  Westec, the allegedly

13   injured party, is incorporated in Washington and has its principal place of business in

14   Washington, whereas Landmark is located in Oklahoma and Georgia.  In addition, the

15   first two contacts—place of injury and place of conduct—are of less significance where,

16   as here, the alleged injury did not occur in a single, ascertainable state, as with personal

17   injuries and injuries to tangible things.  *See id.* cmt. e.  The court's analysis of the policy

18   implications of the choice of law for Westec's tort claims is consistent with its analysis

19   for the contract claims.  The court finds that Washington's interest in the issues in this

20   case outweighs California's interest, particularly where neither Westec nor Landmark is a

21   California citizen, and where a reasonableness hearing will alleviate California's concern

22   for protecting the insurer from liability for unreasonable or collusive settlements.

1  Therefore, viewing the evidence in the light most favorable to Landmark, the court

2  concludes that Washington has the most significant relationship to the occurrence and to

3  the parties and that Washington law will apply to the tort and CPA claims that Westec

4  assigned to Tilden-Coil.

5                              **III.    CONCLUSION**

6          For the foregoing reasons, the court GRANTS Tilden-Coil's motion for summary

7  judgment regarding choice of law (Dkt. # 29).

8          Dated this 11th day of June, 2010.

9

10

11         JAMES L. ROBART
           United States District Judge

12

13

14

15

16

17

18

19

20

21

22

ORDER- 14